# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

HOPE S.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 3:18-05411 TLF

ORDER REVERSING AND REMANDING FOR ADDITIONAL PROCEEDINGS

Plaintiff brought this matter for judicial review of the Commissioner's denial of her application for supplemental security income ("SSI"). As explained below, the Court reverses and remands because the ALJ erred by failing to consider Plaintiff's symptom testimony, and because there is not substantial evidence to support the ALJ's determination that there were substantial jobs in the national economy that plaintiff would be able to perform.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 28, 2014, plaintiff filed an application for SSI, alleging disability beginning February 1, 2012. Dkt. 8, Administrative Record ("AR") 16. Her application was denied on initial administrative review and on reconsideration. *Id*. Plaintiff appeared and testified at two hearings before an administrative law judge ("ALJ"). *Id*. On May 10, 2017, the ALJ determined plaintiff was not disabled. AR 13.

The Commissioner employs a five-step sequential disability evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any step thereof, the disability determination is made at that step, and

ORDER REVERSING AND REMANDING FOR
ADDITIONAL PROCEEDINGS - 1

the sequential evaluation process ends. *Id.* Step one considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing 20 C.F.R. § 416.920(a)(4)). Step two considers "the severity of the claimant's impairments." *Id.* If the claimant is found to have a severe impairment, step three considers "whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the claimant's residual functional capacity ("RFC") is considered at step four in determining whether the claimant can still do his or her past relevant work and, if necessary, at step five "make an adjustment to other work." *Id.*

At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since plaintiff's application date of January 28, 2014. At step two, the ALJ found plaintiff had the following severe impairments: "left knee degenerative joint disease; left shoulder degenerative joint disease; carpal tunnel syndrome; dysphagia/Barrett's esophagus; h pylori, gastroesophageal reflux disease; gastric nodule; lymphadenopathy; thoracic adenopathy; sarcoidosis/non-necrotizing granulomatous inflammation; history of bone tumor (enchondroma); morbid obesity; fibromyalgia, chronic pain disorder; and obesity[.]" AR 18. At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 22.

Prior to step four, the ALJ determined plaintiff had the RFC to perform sedentary work with additional mental limitations and physical limitations related to hazards, the environment, posture, climbing, and use of the upper extremities. *See* AR 22-23. After determining plaintiff's RFC, the ALJ found at step four plaintiff has no past relevant work, but that at step five she

could perform jobs existing in significant numbers in the national economy, and therefore found plaintiff was not disabled. AR 36.

## II. DISCUSSION

Plaintiff seeks reversal of the ALJ's decision, arguing the ALJ erred by (1) not providing legally sufficient reasons to discount plaintiff's testimony about the combined impacts of her impairments; (2) not providing legally sufficient reasons to discount the opinions of plaintiff's treating provider Don Prater PA-C; and (3) wrongly concluding there were sufficient jobs in the national economy plaintiff could perform. *See* Dkt. 10, pp. 1-13.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009-10 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010.

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting

1  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn,* 495 F.3d at 630.

### A. Whether the ALJ appropriately evaluated plaintiff's symptom testimony.[1]

Plaintiff contends the ALJ erred in discounting her testimony regarding the limitations that her impairments cause. Dkt. 11, pp. 4-5.

The United States Court of Appeals for the Ninth Circuit uses a two-step inquiry for determining whether and to what extent the claimant's testimony about severity of symptoms must be credited:

- First, has the claimant presented objective medical evidence of an impairment that reasonably could produce the pain or other symptoms alleged? The claimant is not required to show that the impairment could reasonably be expected to result in the exact severity of symptoms that the claimant alleges; the claimant is only required to show that the impairment could reasonably have caused some degree of the symptoms. The claimant is not required to produce objective medical evidence of the specific symptoms (for example, pain) or the severity thereof.
- Second, if the first step is satisfied and there is no evidence of malingering, then the Court asks: has the ALJ provided clear and convincing reasons for rejecting the claimant's testimony about the severity of symptoms?

*See Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017).

---

[1] While plaintiff does not mention the terms "symptom testimony" or "credibility determination" in the summary of her argument or in the argument heading, the crux of her challenge is the ALJ did not incorporate into the RFC all the limitations she described in her symptom testimony. See Dkt. 11 pp. 1, 4-7.

ORDER REVERSING AND REMANDING FOR
ADDITIONAL PROCEEDINGS - 4

Here, plaintiff testified that daily pain is her biggest obstacle regarding work. AR 124. She stated the primary source of pain was her left knee, and to a lesser degree her right knee and left shoulder. She also described "whole body" pain in her muscles and joints. AR 136. Plaintiff testified that her pain makes personal care difficult—she takes short showers because she cannot remain standing for long, and her left shoulder pain limits her ability to reach places on her body. AR 137. Plaintiff asserted she can stand in one place no more than fifteen minutes and can sit for no longer than 15-30 minutes. She stated that she can walk no more than 2 blocks. AR 325. Plaintiff also claimed she experiences numbness in her hands and total body weakness. AR 141. Plaintiff stated that she can carry a gallon of milk in her right but not left hand. AR 142.

She testified her daily activities are limited—she sometimes stays in bed all day due to pain and has a diminished activity level due to fatigue. She stated she goes grocery shopping a few times a month and does so using an electrical cart. *See* AR 138, 326. She stated that pain makes it difficult to concentrate and affects her sleeping. AR 144. She testified that when she is feeling up to it, she goes to church every Sunday and teaches a 45-minute Sunday school class to about four preschoolers. AR 118-119. Plaintiff also asserted she missed roughly one of her weekly classes each month due to pain. *See* AR 140.

To relieve pain, plaintiff takes medication or lays down. AR 143. She previously used Fentanyl patches for regular pain and took Percocet for breakthrough pain; at the time of the hearing she was no longer being prescribed any Fentanyl. AR 132-35, 1247. She asserted she must lay down for one or two hours before she can get back on her feet or sit. AR 143. Plaintiff estimated her pain at the time of the hearing was a nine out of ten in severity. AR 135. Plaintiff claimed she was able to handle most light housework when taking fentanyl, but without fentanyl, housework is a challenge. AR 139.

In late 2016, plaintiff allegedly began taking methotrexate once a week to treat sarcoidosis of the lymph nodes. AR 81-82. According to plaintiff, methotrexate makes her sick for four to five days—two days of sickness and vomiting followed by two to three days of fatigue and exhaustion. AR 81, 84. Her specialist allegedly told her she may have to take methotrexate permanently. AR 82.

The ALJ discounted plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms because: (1) plaintiff's treatment for her knee and shoulder pain was largely conservative and she reported adequate relief with medication; (2) plaintiff showed inconsistent engagement with physical therapy and recommendations to lose weight and instead opted for narcotic medication as the primary method to treat her pain; (3) plaintiff's nausea and fatigue were intermittent; and (4) plaintiff's activities were inconsistent with the degree of pain and limitation she alleged. AR 34.

First, the ALJ noted plaintiff "has undergone largely conservative treatment for her knee and shoulder pain with narcotic medication management from which she has reported adequate relief to maintain her activities of daily living." AR 34 (citing AR 389-417, 482-509, 872-93). However, the ALJ provided no explanation how allegedly conservative treatment for knee and shoulder conditions undermines the limitations plaintiff alleged. *See id*. On the other hand, plaintiff testified that she needs her left knee replaced, but must lose 100 pounds before she can have the knee replacement surgery. AR 125. Hence, her alleged conservative treatment does not necessarily suggest a lack of disabling symptoms, but rather a lack of viable treatment options.

Furthermore, plaintiff's self-reports that narcotic medication gave her adequate relief to maintain her activities of daily living are not a good reason to discount her testimony because plaintiff's self-reports do not show a level of functionality that suggests ability to sustain

competitive employment. She testified that her pain level is usually a "seven" or a "nine," depending on whether she is using fentanyl, and that when she is using fentanyl, she can do most light housework. AR 135, 139. This is consistent with the treatment reports the ALJ cited, which show self-reports of incomplete relief from pain medication. *See, e.g.*, AR 499 (noting pain ranging from 6/10 at best to 9/10 at worst).

Second, the ALJ discounted plaintiff's symptom testimony because plaintiff had not sustained engagement with physical therapy and recommendations to lose weight, and she instead opted for narcotic pain management. AR 34.

If a plaintiff failed to seek or follow recommended treatment, the ALJ may properly consider this as evidence the plaintiff is not credible in describing symptoms. *Trevizo*, 871 F.3d at 679. Failure to follow treatment for obesity does not bear on plaintiff's credibility. *See Orn*, 495 F.3d at 638.

Here, while the record contains sporadic references to physical therapy referrals, plaintiff complained to her providers that physical therapy did not provide adequate relief. *See* AR 404, 408. In this situation, a lack of sustained engagement in physical therapy does not suggest her symptoms are not as severe as alleged.

Furthermore, plaintiff's treatment providers repeatedly recommended she continue to use opioid medications for the management of her chronic pain. *See, e.g.*, AR 396, 400, 404, 409. The ALJ did not have substantial evidence to discount plaintiff's pain testimony due to her use of opioids—the record shows plaintiff pursued the course of action that gave her the most relief and followed her treatment providers' recommendations that drugs containing opioids would be helpful to relieve pain.

Third, the ALJ discounted plaintiff's testimony about her symptoms of nausea and fatigue from methotrexate, and found those symptoms were not as serious as she alleged. AR 34. The ALJ noted two instances when plaintiff sought treatment for other conditions and denied nausea, and a third instance when plaintiff reported "transient nausea with methotrexate." *Id.* (citing AR 1213, 1154, 1205). The ALJ also cited several treatment reports showing more often than not plaintiff denied fatigue. *Id.*

However, plaintiff testified that after taking methotrexate, she typically feels sick for two days, followed by two to three more days of fatigue, before she feels better. AR 81, 84. This testimony is consistent with the medical record. *See* AR 1154. Therefore, the ALJ's finding—that plaintiff's testimony about nausea and fatigue was inconsistent with the medical record—is not supported.

The ALJ also discounted plaintiffs' testimony because,

> she was able to engage in a range of activities that were inconsistent with the extreme degree of pain and limitation she alleged. The evidence shows that she was able to perform personal care; prepare meals; do light housekeeping and laundry; walk her dog; use a tablet or phone for internet access, emailing, texting, and sending photos; go to church regularly, and teach a Sunday school class to children.

AR 34.

Plaintiff's activities are not so vigorous, sustained, or demanding that the ALJ should discount her symptom testimony. Claimants do not need to show they are "utterly incapacitated in order to be disabled." *Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017). Activities such as childcare, washing dishes, house cleaning, shopping, running errands, feeding pets, and other common domestic responsibilities, do not detract from a claimant's credibility regarding her overall disability. *Id.* at 667-68. An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when those activities contradict the claimant's subjective complaints

or are transferable to a work setting and the claimant spends a "substantial part of her day" on them. *Smolen v. Chater,* 80 F.3d 1273, 1284 & n.7 (9th Cir. 1996).

"[D]isability claimants should not be penalized for attempting to lead normal lives." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). And "'many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" *Trevizo*, 871 F.3d at 682 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

In this case, plaintiff's activities do not contradict her other testimony, nor do they meet the threshold for transferable work skills. Walking a dog for an unspecified length, performing limited personal care such as short showers, preparing simple meals, doing light housekeeping, and using a tablet or phone are activities that are so undemanding they cannot be said to bear a meaningful relationship to the activities of the workplace. *See Orn*, 495 F.3d at 639. Likewise, plaintiff's ability to attend church and teach a Sunday school class to toddlers when she feels up to it does not show the ability to sustain competitive employment. Plaintiff testified that sometimes her pain is so bad she can do no more than lay in bed all day, and since she began teaching Sunday school lessons 8 months before the hearing, she missed roughly eight Sunday school lessons due to pain. AR 140.

Harmless error principles apply in the Social Security context. *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115.

Among several other limitations, plaintiff testified that two to three times per month her pain gets so bad she can "barely walk." AR 130. She also testified that sometimes she lays in bed

for days at a time because of pain and was forced to miss teaching roughly one of her weekly Sunday school classes each month due to pain. *See* AR 137, 140. Yet the RFC includes no limitations regarding work attendance. *See* AR 22-23. Had the ALJ fully credited plaintiff's testimony, among other things, the ALJ may have included additional limitations regarding work attendance. In turn, these limitations may have been conveyed to the VE, affecting the ultimate disability determination. Because the ultimate disability determination may have changed with proper consideration of plaintiff's testimony, the ALJ's error is not harmless and requires reversal.

### B. Whether the ALJ appropriately evaluated evidence from Don Prater, PA-C.

Plaintiff contends the ALJ did not provide legally sufficient reasons to discount the opinion of Don Prater, certified physician's assistant.

A physician's assistant is an "other medical source," who is "not technically deemed to be" an "acceptable medical source," but whose opinion nevertheless is considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record. Social Security Ruling (SSR) 06-03p, 2006 WL 2329939 *3. An ALJ may disregard opinion evidence provided by other medical sources, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

Here, Mr. Prater completed functional assessments of plaintiff in March and June of 2016. See AR 900-05, 579-83. Noting a treating relationship with plaintiff dating from March of 2015, he diagnosed fibromyalgia, sarcoidosis of the lymph nodes, and chronic pain, and assessed severe mental and physical limitations. AR 580, 900.

He opined plaintiff cannot meet competitive standards in understanding and remembering detailed instructions and in completing a normal workday and workweek without interruptions from psychologically based symptoms. AR 901-02. He also assessed limitations in plaintiff's ability to interact appropriately with the public and to maintain socially appropriate behavior.

Among the physical limitations he assessed, Mr. Prater opined plaintiff can sit less than two hours in an eight-hour work day and stand/walk less than two hours in an eight-hour workday. AR 903. He opined plaintiff requires an assistive device to occasionally stand or walk. AR 904. Lastly, he opined that plaintiff would have good days and bad days, and on average, she is likely to be absent from work roughly three days per month because of her impairments or treatment. AR 905.

The ALJ gave Dr. Prater's opinions little weight because (1) the extreme limitations Mr. Prater assessed were inconsistent with plaintiff's presentation at examinations; (2) the assessed limitations were inconsistent with reports of plaintiff's activities; and (3) an orthopedic medical expert reviewed Mr. Prater's March and June 2016 opinions and concluded the evidence of record did not support the limitations he assessed.

As the ALJ noted, clinical examinations routinely showed plaintiff presented as alert and oriented with appropriate mood and affect. AR 35. (citing *inter alia* AR 391, 440). There is arguably some tension between these findings and the mental health limitations Mr. Prater opined. Likewise, reports that plaintiff had appropriate mood and affect are arguably inconsistent with Mr. Prater's opinion that plaintiff is limited in her ability to interact appropriately with the public and maintain socially appropriate behavior. Lastly, the ALJ noted objective examinations showing plaintiff walked with a normal gait, which is arguably inconsistent with Mr. Prater's opinion that plaintiff needs an assistive device to occasionally stand or walk. *See* AR 904.

The arguable inconsistencies between plaintiff's presentation at examinations and the limitations Mr. Prater assessed are germane reasons to discount Mr. Prater's opinions. *See Turner*, 613 F.3d at 1224. Accordingly, the ALJ did not err in discounting Mr. Prater's opinions.

### C. Whether the ALJ appropriately concluded plaintiff can perform jobs existing in significant numbers in the national economy.

Plaintiff contends the ALJ erred at step five of the sequential analysis in concluding she can perform jobs existing in significant number in the national economy.

The Court has found the ALJ committed harmful error and has directed the ALJ to reassess plaintiff's symptom testimony on remand. *See* Section I.A, *supra*. The ALJ is directed to reassess the RFC on remand. *See* SSR 96-8p, 1996 WL 374184 (an RFC is assessed based on all of the relevant evidence in the case record, including information about the individual's symptoms); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). When the ALJ conducts another review of plaintiff's RFC on remand, the ALJ is directed to re-evaluate Step Five to determine whether there are jobs existing in significant numbers in the national economy plaintiff can perform, given the new RFC.

## III. CONCLUSION

For the foregoing reasons, the decision of the Commissioner was not based on substantial evidence. Therefore, the Commissioner's decision is hereby REVERSED AND REMANDED for additional proceedings.

Dated this 6th day of May, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge